**SCHWARTZ SUPPLY CO., Inc., v. BREEN et al.***

No. 17049.

Court of Appeal of Louisiana. Orleans.

Oct. 31, 1938.

---

*Rehearing denied Nov. 14, 1938; writ of certiorari denied by Supreme Court Jan. 10, 1939.

Deutsch & Kerrigan and Marian Mayer, all of New Orleans, for appellant.

Irwin & Gertler, of New Orleans, for appellee.

JANVIER, Judge.

Though the facts out of which this litigation arose have been heretofore stated when we considered the matter for the first time (179 So. 626), we deem it advisable to restate the controlling facts in order that there may be a clear understanding of our views concerning the relationship between the furnisher of supplies and the building owner for whose building the contractor purchases supplies and materials.

Morris Breen, having decided to have made certain repairs and improvements to a building owned by him, let the work to a contractor, A. L. Fishman. Fishman purchased materials and supplies from Schwartz Supply Company, Inc., which company sued both Breen, the owner, and Fishman, the contractor, for a balance of $165.77 alleged to be due on materials and supplies. Fishman made no serious defense, but Breen, the owner, interposed a plea of payment, contending that he had issued to Fishman a check for $200, which check Fishman had delivered to Schwartz Supply Company, Inc., but for which he, Breen, had not been given credit.

The Schwartz Company conceded that it had received the said check, but, on the first trial of the case, offered to prove that the check had been issued by Breen not to be used in paying for materials, but for the purpose of putting into the hands of Fishman, the contractor, sufficient cash to meet his pay roll for that week. When the Schwartz Company tendered evidence for the purpose of proving this, objection was made on the ground that, since the Schwartz Company had received the check, it could not be heard to explain that the check was used for some purpose other than the payment for materials and that, under the doctrine announced in Hortman-Salmen Co. v. Naquin, 12 La.App. 491, 126 So. 453, and Carolina Portland Cement Co. v. U. S. Fidelity & Guaranty Co., 18 La.App. 105, 137 So. 381, and followed in many other cases, the check could be devoted by the

furnisher of materials to one purpose only, i. e., the payment for materials purchased by the contractor and used in the building of the owner. Accordingly, there was judgment dismissing the suit of the plaintiff against Breen, since, as we have said, plaintiff was not permitted to show that the check which Breen had issued was not intended by him to be used in the payment for materials.

When the matter came before us we felt that if, as a matter of fact, Breen had issued the check not to pay for materials, but for the purpose of placing in the hands of the contractor, Fishman, sufficient cash for his payroll, and if, under these circumstances, the Schwartz Company had merely accepted the check and had then turned over to Fishman the equivalent thereof, either in the form of cash or in another check, it should not be bound by the rule controlling those cases above cited and should be permitted to show that Breen had issued the check in order to produce payroll funds. We, therefore, remanded the matter because we felt "that the evidence concerning the check in question should be admitted so that it may be made to appear clearly whether or not that check was issued to be applied on materials, or was issued to be used to produce cash to be applied in meeting the payroll". Our view then was and now is that, whenever there comes into the hands of a materialman a fund which he knows originated with the owner, whether it be in the form of a check, in cash, or otherwise, he, the materialman, is under the absolute duty to give on his books credit for the materials and supplies sold to the contractor for use in the particular building of the particular owner who produced the said fund, unless it can be shown clearly and unmistakably that the owner did not intend that credit should be so given. This view is well fortified by the authorities above referred to and by Geo. E. Breece Lumber Co. v. Morris, et al., 19 La.App. 875, 141 So. 787, and Madison Lumber Co. v. Globe Indemnity Co., La.App., 161 So. 775.

It is contended that when Breen issued the $200 check on August 7th, he knew that the proceeds thereof were to be used to pay labor and in our first opinion we said that if, as a matter of fact, he had issued it for that purpose, then, if the Schwartz Company received it and either produced cash or its own check, it should not be required to give credit for the materials purchased, but should be treated as having "in effect cashed the said check", as we recognized the fact that, in those circumstances, it would be unfair to hold that the Schwartz Company should be charged with having received that check as a payment for materials.

At the second trial plaintiff placed Fishman on the witness stand for cross-examination under Act No. 115 of 1934, which supersedes Act No. 126 of 1908. He testified that when he, on August 7th, which was a Saturday, asked Breen for a payment, he said to Breen that the money was needed to pay labor, and he further stated that Breen could not have contemplated that the payment was needed on the materials account because no bill for materials had as yet been rendered.

Breen, on the other hand, testified that Fishman had asked for a check to be applied on the materials account so far as necessary and that he had given him the check for $200, telling him to pay for the materials and to use any balance in payment for labor for the week. The Schwartz Company had had no communication with Breen and obviously none of its officials knew just why the check had been issued by him. There are circumstances which tend to corroborate the testimony of Fishman that the check was issued for the payroll. In the first place it was issued on a Saturday and it is well known and the record shows that labor payments are usually made on that day of the week. In the second place, no bill for materials had been rendered and it is not probable that the contractor would have been seeking funds to pay a material bill which had not yet been issued. On the other hand, Breen, though no bill had been issued, knew that certain materials had been delivered and used and knew that he was liable therefor, so that, though improbable, it is possible that he gave the check to Fishman to enable him to pay to the Schwartz Company whatever amount might be due and to devote the balance to the payment for labor.

We would have no difficulty in affirming a judgment based on the conclusion that Breen had issued the check for the purpose of producing funds for the payroll had the trial court so decided. But our brother below did not reach that conclusion and decided, on the contrary, that

that fact had not been sufficiently established by the Schwartz Company, and we are, therefore, confronted with a conclusion reached by the trial court on a question of fact, which conclusion the record does not show to be obviously incorrect.

We are not unmindful of the loss which may be sustained by the materialman, but we must bear in mind the position in which owners may find themselves if the accounts between contractors and materialmen are not carefully scrutinized. From the cases referred to, it is evident that the courts have determined that materialmen who find themselves in possession of funds produced by owners must be certain to give proper credit and cannot take chances which might jeopardize the interests of those owners.

The facts here clearly show that the Schwartz Company was willing to trade with Fishman on the probability of his being able to pay for the materials and it also shows that they extended him credit on various occasions and even made cash advances to him to be paid out of funds produced by the various owners for whom he was executing contracts. Under such circumstances we consider the materialman as to some extent involved with the contractor and, as between the materialman · and the owner, we think that the materialman should be held to have taken the chance, and, therefore, should be required to bear the loss.

We refer, in passing, to the fact that both parties have discussed various entries on a page taken from the ledger of plaintiff company. Defendant has contended that the ledger shows that, though the proceeds of the Breen check were not received until August 28th, the advance representing substantially all of the proceeds had been made by the Schwartz Company one week earlier, on August 21st. It is quite obvious that both parties are in error in referring to these entries as evidencing this transaction because, as a matter of fact, the Breen check was issued and used on August 7th, some weeks earlier, and the proceeds of that check, in the form of another check, were given by the Schwartz Company to Fishman, also on August 7th.

We find it necessary to refer to the fact that when, on the second trial, counsel for plaintiff called to the stand Fishman, the contractor, she did so under Act No. 115 of 1934, which has superseded Act No. 126 of 1908. In spite of this and over the objection of counsel for plaintiff, counsel for the other defendant, Breen, was permitted to cross-examine Fishman. Counsel for plaintiff, in support of the objection, argues that, since Fishman was also a defendant in the case and had been called · for cross-examination under the statute, the co-defendant should not have been permitted to cross-examine him, but should have been required to place him on the stand as a witness in his own behalf and should be bound by his testimony.

In permitting counsel for Breen to cross-examine Fishman, the trial court was not in error. In fact the error into which the court fell was in permitting counsel for plaintiff, in placing Fishman on the witness stand, to do so under the statute referred to since, at that time, Fishman's testimony was required not against himself, but against the other defendant, Breen. Counsel for plaintiff states that it was proper to permit Fishman to be called under the act since "Fishman's interests are naturally inconsistent with those of the plaintiff". But this is not correct, for, as a matter of fact, considering the status of the litigation at the time, the interests of Fishman were identical with those of plaintiff since both were attempting to show that Breen had issued the check to produce funds with which labor might be paid. Furthermore, the interest of Fishman was always, to some extent, aligned with the interest of plaintiff, though it is true that both Fishman and Breen were defendants, for Fishman really did not contest his liability to plaintiff, but both he and the plaintiff were at all times taking the same position and asserting that Breen should not be given credit for the proceeds of the check. Under such circumstances it was not proper to permit one defendant called by plaintiff under the statute to give testimony adversely affecting the other defendant; or, rather, it was not proper to consider such testimony as against the other defendant.

In Edwards Bros. v. Berner et al., 154 La. 791, 98 So. 247, the Supreme Court, in considering whether the previous statute (Act No. 126 of 1908) authorized the acceptance from one defendant—placed on the stand for cross-examination—of evidence against his co-defendant, said [page 249]: "* * * The statute (Act No. 126 of 1908) grants the right to a litigant to examine his opponent, as under cross-examination, without being held as vouch-

ing to the court for the credibility of the opponent so placed upon the stand, or as being estopped in any lawful way from impeaching the testimony given by such adversary. The statute does not extend the right and privilege of a litigant to cross-examine one defendant as against his co-defendant."

In Parks v. Hall et al., 179 So. 868, the Court of Appeal for the Second Circuit was confronted with the question of whether or not the present statute permitted one co-defendant to be placed on the stand to give testimony against the other co-defendant, where their interests were not identical. The court said [page 872]: "We think that the trial court erred in over-ruling the objection urged by the employer and his insurer, and that defendant Hall's testimony, in so far as they were concerned, should have been excluded. Under the provisions of Act No. 126 of 1908, as amended by Act No. 115 of 1934, a litigant may examine his opponent, as under cross-examination, and the testimony elicited is binding on the witness. But such litigant is not granted the right by that statute to obtain testimony under cross-examination from one defendant for use against and to bind his codefendant.   *   * "

In Borne-Norris Hardware & Supply Co. v. Ballantyne, 5 La.App. 82, this court said:

"At the hearing of the trial court, plaintiff put Mrs. Ballantyne upon the stand, under Act 126 of 1908, permitting the examination of an opponent, as under cross examination.

"We pretermit, however, any consideration of the testimony of this witness, either as to its weight, or pertinence, for in our opinion, such testimony, so elicited, is not evidence against her co-defendant."

Indeed, it is inconceivable that testimony so elicited from one defendant, whose interests are antagonistic to those of another defendant, could be considered in connection with the claim against the other defendant. Often, as here, two defendants are as much opposed to each other as both are to the plaintiff, yet plaintiff would have us hold that, because of the statute, one of the defendants may be called as an adverse party and, under such examination, may be required to give testimony which may be availed of against the other defendant and yet the other defendant be not permitted to cross-examine the witness except by placing him on the stand himself. We think, therefore, that when plaintiff here used Fishman as a witness against Breen, it did so not in reality under the act, but, in truth, as a witness in its own behalf, and that, therefore, it was proper to permit counsel for Breen to cross-examine this witness.

We are somewhat concerned by the admission of Breen that, when he gave Fishman the check, he stated that such balance as might remain after paying for materials should be used to pay labor, and our concern results from the fact that such balance as did remain should not properly be charged against plaintiff company. Yet, under the view which we take of the matter—that the burden of showing all facts in connection with the two hundred dollar check was properly upon plaintiff—we are unable, in the absence of convincing proof, to do otherwise than hold that the check should be credited on the account. To do this would produce a credit on the books more than sufficient to offset the balance claimed by plaintiff and, therefore, plaintiff cannot, in this suit, be permitted to recover.

Since plaintiff's failure to secure judgment results from its inability to produce proof, we think that the judgment, which was one of non-suit, was proper.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of plaintiff.

Affirmed.