460 So.2d 1117 (1984)
Hance v. NORRIS, et al., Plaintiffs-Appellees,
v.
POOL WELL SERVICE, INC., et al., Defendants-Appellants.
No. 16573-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
John F. Colowich, New Orleans, for defendants-appellants.
*1118 Dimos, Brown, Erskine & Burkett by Donald R. Brown, Monroe, for plaintiffs-appellees.
Before HALL and SEXTON, JJ., and PRICE, J. Pro Tem.
SEXTON, Judge.
This personal injury litigation arose as a result of an automobile collision between plaintiff's motor home and defendant's pick-up, which was being driven by its employee, Homer M. Jones. The defendant Pool Well Service, Inc. and its liability carrier stipulated liability. After a trial, the instant appeal limited to the issue of quantum followed. We affirm.
Mr. and Mrs. Norris were traveling in their motor home when Homer Jones crossed the centerline into their path. At the time of the collision, plaintiff, Ida Norris, was driving the motor home, Hance Norris was in the passenger seat, and their eight year old daughter, Tina, was in the back seat.
In the crash, the minor child Tina received a blow to the head which caused an earache which subsided after medication. She also received an injury to her left knee, which healed completely in about six weeks, leaving a small but visible scar. The judgment appealed awarded her father, in his capacity as administrator, the sum of $2,500.00.
Hance Norris suffered various cuts and bruises which were untreated, and a severely bruised kneecap for which no medication was prescribed and which healed completely within six weeks. Additionally, Mr. Norris testified that he suffered severe mental anxiety over the possibility that the motor home would explode from the butane fuel leak at the crash site, and over the possibility that the wreck would cause his fourth heart attack. For these injuries and mental anguish, the trial court awarded Mr. Norris $2,500.00.
After the collision, an initial medical examination revealed the following injuries to Mrs. Norris: a small laceration of the nose; a small infected red laceration of the left side of her face; a bruise of her left knee; a large bruise on her right thigh; a painful left hip; tenderness and soreness of the epigastric area, the right posterior neck, and left sacroiliac and lumbosacral area; and a slight decreased range of motion. There was also an initial gastritus and duodenitis which was diagnosed as a benign, superficial ulcer, which, in the doctor's opinion, could have been caused by the accident's accompanying stress. Mrs. Norris testified that immediately after the impact, she had a burning sensation all over her body. Within one week, her legs had begun to swell, and she began to break out in multiple small red punctate lesions on various parts of her body including her face, hand, forearm, foot, buttocks, legs, upper chest and neck. These lesions subsequently became infected by an antibiotic resistant Staphylococcus aureus bacteria. Mrs. Norris experienced itching and pain from these lesions. Some of the lesions, particularly those on her lower legs, persisted until the date of trial, some three years after the collision.
At trial, defendants contested the causal link between the skin lesions and the automobile accident. The trial court found that the lesions resulted from glass imbedded in Mrs. Norris' skin from the impact of the two vehicles. For her injuries, Mrs. Norris was awarded the sum of $45,000.00.
Causation is a fact question on which the trial judge's finding cannot be disturbed absent manifest error. Downey v. Clark, 426 So.2d 331 (La.App. 2d Cir. 1983); Smith v. State, through the Department of Transportation, etc., 412 So.2d 685 (La.App. 2d Cir.1982), writ denied, 413 So.2d 907 (La.1982). Our independent evaluation of the record in this case reveals no abuse of the trial court's discretion. Dr. Creighton Chandler, Jr., a determologist who first examined Mrs. Norris for her recurring lesions some eight months after the collision stated that the glass could have caused or contributed to her injury. He qualified this opinion later in his testimony by stating that he could not relate the lesions to the accident unless *1119 she had open sores continuously since the time of the accident. Mrs. Norris' general practitioner, Dr. Samuel Scurria, testified that the lesions on her body were consistent with glass fragments imbedded in her body. In his opinion, the glass wounds and imbedded particles served as an entry place into her body for the Staph bacteria. Another doctor in Dr. Scurria's firm first saw Mrs. Norris two days after the wreck on August 20, 1980. In his report, he noted the location of the lacerations on her body. Mrs. Norris saw Dr. Scurria on September 17, 1980, and complained of a low grade fever. At this time, the doctor noted lesions on her face, right hand, left forearm, and buttocks.
In addition to the medical testimony, plaintiff also introduced lay testimony to support her claim. Hance Norris testified that immediately after the crash, his wife had red specks all over her face and arms and looked like she had measles. Mr. and Mrs. Norris, as well as Tina, testified that Mrs. Norris had not had problems with her skin prior to the wreck. Both Mr. and Mrs. Norris testified that glass had been extruded from these wounds on her skin.
When the medical and lay testimony are considered, we are unable to find a clear error in the trial court's finding of a causal connection between these lesions and the accident.
Defendant Pool Well Service, Inc. further claims that the general damage awards to all three plaintiffs were so excessive as to constitute a clear abuse of discretion.
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made in the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Coco v. Winston Industries, Inc., 330 So.2d 649 (La.App. 3rd Cir. 1976), reversed as to quantum, 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La. 1974); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Winterrowd v. Travelers Indemnity Co., 452 So.2d 269 (La.App. 2d Cir. 1984); Black v. Ebasco Services, Inc., 411 So.2d 1159 (La.App. 1st Cir.1982), writ denied, 414 So.2d 1253 (La. 1982); Greene v. Wright, 365 So.2d 551 (La.App. 1st Cir.1978). Moreover, the appellate function in reviewing quantum is limited to raising inadequate awards to the lowest amount the trial court could have reasonably awarded, and lowering excessive awards to the highest amount the trial court could have reasonably awarded. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., supra; Winterrowd, supra; Alexander v. Leger, 423 So.2d 731 (La.App. 3d Cir.1982); Greene v. Wright, supra.
The appropriate procedure for testing whether the jury abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the jury. The converse of this rule is also true: in determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Wilson v. Aetna Casualty and Surety Company, supra. Further, we note the cautionary language of Reck v. Stevens, supra, to the effect that an appellate court must reach a determination that the trier of fact abused its discretion before a resort to prior awards is appropriate for purposes of determining what would then be an appropriate award.
We are thus contrained to view the evidence in the light most favorable to plaintiffs to determine whether these awards are excessive. While the awards to Mr. Norris and Tina test the upper limits of the trial court's discretion, we are unable to conclude that the trial court clearly abused this discretion with respect to these plaintiffs. *1120 Both testified that they suffered some anxiety due to the collision besides their bodily injury. Further, Tina was left with a small but permanent scar.
With respect to the general damage award to Mrs. Norris, we note that her lesions, particularly those on her lower legs, persisted until the trial, some three years after the accident. Dr. Scurria testified that due to the resistance of the bacteria to treatment by antibotics, Mrs. Norris' skin problems would continue. The lesions which have healed have left circular, pigmented scars, approximately 5 millimeters in diameter. The trial court described these scars as extremely unsightly. This observation is clearly supported by the pictures received in evidence.
Because of these infected lesions, Mrs. Norris' activities were restricted for approximately one year since her legs would swell if she remained on her feet for an extended period of time. Mrs. Norris also testified that during this one year period she was unable to perform her usual housework because of her inability to stand on her feet.
Mrs. Norris testified that due to the extensive and unsightly scars and remaining lesions, she is unable to wear shorts or a swimsuit. Since she can no longer swim, family outings including this activity have been curtailed. She stated that she has suffered great embarrassment over the appearance of her skin, even among close relatives.
Other than her skin problems, Mrs. Norris testified that she still has difficulty with her neck and back which prevents her from turning completely to the left side. She also stated that she continues to have digestive problems and must therefore restrict her diet.
When the evidence is viewed in the light most favorable to plaintiff, we find that while this award is in the upper range, it does not constitute a clear abuse of discretion. Accordingly, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.